James E. Cecchi
Caroline F. Bartlett
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

Joseph H. Meltzer
Melissa L. Yeates
Tyler S. Graden
Jonathan F. Neumann
Matthew T. Macken
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIMOTHY Y. CHEN, ROBERT WARREN, MARCO BALTODANO, MARK D. CAPLIN, and ALEX WILSEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Defendant. | Case No.: 2:26-cv-05409 (EP) (JRA)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

# TABLE OF CONTENTS

I. INTRODUCTION ....... 1
II. JURISDICTION AND VENUE ....... 7
III. PARTIES ....... 8
    A. Plaintiffs ....... 8
    B. Defendant ....... 10
IV. FACTUAL ALLEGATIONS ....... 11
    A. VW Marketed the Class Vehicles as Safe, Technologically-Advanced, and Environment-Friendly ....... 13
    B. The Battery Defect ....... 17
        1. Recall 25V-836 Was Delayed and Under-Inclusive ....... 20
        2. Recall 26V-030 ....... 26
    C. VW Knew or Should Have Known About the Battery Defect Long Before It Disclosed the Problem ....... 30
    D. Plaintiffs and Members of the Classes Suffered an Injury ....... 37
V. TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL ....... 38
VI. CLASS ACTION ALLEGATIONS ....... 40
VII. CLAIMS FOR RELIEF ....... 45
VIII. PRAYER FOR RELIEF ....... 91
IX. DEMAND FOR JURY TRIAL ....... 92

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct, and are made upon information and belief as to all other matters, based on an investigation by counsel.[1]

## I. INTRODUCTION

1. Plaintiffs Timothy Y. Chen, Robert Warren, Marco Baltodano, Mark D. Caplin, and Alex Wilsey (collectively, "Plaintiffs") bring this class action against Volkswagen Group of America, Inc. ("VWoA") ("VW" or "Defendant"), individually and on behalf of all persons or entities in the United States who purchased, leased, or own a Class Vehicle (defined below), asserting claims for breach of express warranty, breach of implied warranty, fraud by omission/fraudulent concealment, and negligent misrepresentation on behalf of the Nationwide Class (defined below) and for violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200, *et seq.*, and Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.* on behalf of the California Sub-Class

---

[1] Counsel's investigation includes an analysis of publicly available information, including information from the National Highway Traffic Safety Administration ("NHTSA") and independent analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein. In addition, Plaintiffs' counsel continues to investigate whether other model years contain the same defect. Plaintiffs reserve the right to update the definition of Class Vehicles to include additional model years.

(defined below); violation of the Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101, *et seq.* on behalf of the Colorado Sub-Class (defined below); Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq.* on behalf of the Delaware Sub-Class (defined below); and violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* on behalf of the Florida Sub-Class (defined below).

2. The Class Vehicles include model years 2023-2026 Volkswagen ID.4s designed, manufactured, marketed, distributed, sold, leased, warranted, and/or serviced by Defendant (together, the "Class Vehicles"). The Class Vehicles have been built with defective high-voltage ("HV") batteries that are susceptible to misaligned electrodes that can lead to thermal events and fires (the "Battery Defect").

3. The Battery Defect poses a clear and significant safety risk to Plaintiffs and members of the Classes given the possibility that the Class Vehicles may suddenly and unexpectedly catch fire. The Battery Defect also poses a potential risk of fire damage to personal property.

4. The Battery Defect is not new to Defendant. On January 18, 2024, VW first learned of a battery fire involving a Class Vehicle that was charging at a Level

3 DC charger, the quickest charger currently available.[2] After conducting an on-site investigation, VW concluded that the origin of the fire was within the HV battery.

5. From July 2024 through December 2024, VW received three additional reports of fires originating from the HV battery in Volkswagen ID.4s.

6. It was not until December of 2025—nearly two years after it first learned of a battery fire in one of the Class Vehicles—that VW initiated a safety recall related to the Battery Defect ("Recall 25V-836"), initially recalling 311 2023-2024 Volkswagen ID.4s and eventually expanding the recall to 629 Class Vehicles.[3]

7. Recall 25V-836 identified a "quality deviation (mis-aligned electrode)" for HV batteries produced within a specific period of time, i.e., September 16, 2022 to September 22, 2024. Recall 25V-836 further stated that "[i]n certain situations, a misaligned electrode in the HV battery cell may lead to a fire."

8. Recall 25V-836 also advised that drivers should (1) "set their vehicle's high voltage battery system to a 80% state of charge limitation;" (2) "avoid using Level 3 DC chargers;" and (3) "park their vehicles outdoors immediately after charging and not leave their vehicles charging indoors overnight."

---

[2] Nick Kurczewski, *EV Charging Levels Explained for New and Future Electric Vehicle Owners*, Car & Driver (Jan. 26, 2026), https://www.caranddriver.com/features/a70141873/ev-charging-levels-explained/#level-3-or-dc-fast-charging.

[3] NHTSA, Part 573 Safety Recall Report Recall No. 25V-836 (Dec. 15, 2025), https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V836-1434.pdf.

9. Between December 2025 and January 2026, the supplier of the HV battery in the Class Vehicles, SK Battery America ("SKBA") identified a "second hardware issue from production that potentially could result in a different shifted electrode condition" that is present in the HV batteries used in the Class Vehicles. And, on January 21, 2026, VW issued a second safety recall ("Recall 26V-028"), which affected 670 2023-2024 Volkswagen ID.4s.[4]

10. Also on January 21, 2026, VW issued a third, more expansive recall related to the Battery Defect ("Recall 26V-030"), which involved 43,881 total model year 2023 to 2025 ID.4s.[5] VW disclosed, in Recall 26V-030, that there have been "thermal incidents outside the ranges identified by the [HV battery] supplier" but that VW still has not determined "a clear root cause for these incidents." VW understood that a Self-Discharge Detection ("SDD") software would have triggered a warning in advance of at least three known incidents but that certain vehicles lacked the SDD software.

11. On October 1, 2026, VW issued yet another recall related to the Battery Defect, this time involving 22,524 total model year 2023 to 2026 ID.4s.[6] VW again

[4] NHTSA, Part 573 Safety Recall Report Recall No. 26V-028 (Jan. 21, 2026), https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V028-5667.pdf.

[5] NHTSA, Part 573 Safety Recall Report Recall No. 26V-030 (Jan. 21, 2026), https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V030-0889.pdf.

[6] NHTSA, Part 573 Safety Recall Report Recall No. 26V-630 (Oct. 01, 2026), https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V630-1770.pdf.

disclosed that they had observed "thermal propagation within the high-voltage battery," leading to "potential safety consequences."[7] VW admitted in the recall that "[t]he root cause and repair solution still needs to be identified," and only implemented temporary remedies.[8] The first remedy was a mere "warning sticker to be placed at specific places at the vehicle to remind operators not to charge the HV battery above 80% state of charge."[9] The second remedy, which applies only to certain vehicles depending on their "vehicle configuration and online connectivity," provides that VW "may" configure "some" Class Vehicles to "limit the maximum state of charge of the high-voltage battery to 80 percent."[10] That is to say, VW plans to issue an online software update to cap these vehicles' maximum charge (and thus range) below the level bargained for by the consumer.

12. No reasonable consumer expects to purchase or lease a vehicle containing a concealed defect that creates a risk of a vehicle fire and possible catastrophic danger. The Battery Defect is material to Plaintiffs and members of the Classes. Had Defendant disclosed the Battery Defect, Plaintiffs and members of the

---

[7] *Id.* at 1, 3.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.*

Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

13. Moreover, VW's initial warning to restrict charging undermines the central purpose of an electric vehicle. An 80% charge limitation and an overnight charging restriction would limit the distance that owners could travel. And the avoidance of Level 3 DC chargers, which are fast chargers that save owners considerable time in charging the Class Vehicles, would diminish one of the touted technology and convenience features included in VW's retail order guide.[11] Without access to the fast charger, using an 11 kW Level 2 charger would take 6 hours and 15 minutes to 7 hours and 30 minutes to fully charge the 2023 VW ID.4.[12]

14. Thus, as a direct result of Defendant's unlawful conduct, Plaintiffs and members of the Classes have been harmed and are entitled to, *inter alia*, actual damages, including: damages for diagnosis, repair and/or replacement of the damaged components; damages for the diminished value of their vehicles;

[11] *MY 2025 Retail Order Guide US ID.4*, Emich Volkswagen: Volkswagen Order Guides, https://www.emichvw.com/vw-order-guides/?srsltid=AfmBOooMCiLtiKSn8H2MaO2cyZAuDqAks9gakym-xRp3NxZJpvHO77M- (last visited Apr. 10, 2026).

[12] *Volkswagen ID.4. The First Electric SUV for Everyone*, Capital Volkswagen, https://www.capitolvw.com/volkswagen-id4-electric-vehicle/?srsltid=AfmBOork7cMhhQQFs9ReYjdUxuk4id51grq5QBMwrI96YwULI-aC-PQU (last visited Apr. 10, 2026).

compensatory, statutory, and punitive damages; attorneys' fees; costs; restitution; and/or injunctive and declaratory relief.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Class and members of the Class (as defined below) are citizens of states different from a Defendant.

16. This Court has specific personal jurisdiction over Defendant because Defendant also maintains extensive, continuous, and systematic contacts with New Jersey. VWoA is incorporated in the State of New Jersey. VWoA maintains sufficient minimum contacts in New Jersey; and otherwise intentionally avails itself of the markets within New Jersey through promotion, sale, marketing, and distribution of its vehicles. Defendant has marketed, advertised, and/or sold the Class Vehicles within this District through approximately 25 dealers doing business in the District.[13]

17. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims

[13] *See Volkswagen Group of America Locations*, Volkswagen Group of America, https://www.volkswagengroupofamerica.com/locations (last visited Apr. 10, 2026).

occurred in New Jersey and hundreds of the Class Vehicles at issue are located in New Jersey. Defendant caused harm to hundreds of members of the Class in New Jersey.

## III. PARTIES

### A. Plaintiffs

18. Plaintiff Marco Baltodano ("Plaintiff Baltodano") resides in Wesley Chapel, Florida. Plaintiff Baltodano purchased a 2023 Volkswagen ID.4 from Leesburg Volkswagen in Leesberg, Florida for personal, family, or household purposes on or about December 17, 2022. On or after March 23, 2026, Plaintiff Baltodano received a recall notice from VW informing him of the Battery Defect. He subsequently brought his Class Vehicle to an authorized VW dealer, where technicians installed a software update but did not replace the vehicle's HV battery and/or any of the HV battery's cell modules.

19. Plaintiff Mark D. Caplin ("Plaintiff Caplin") is a citizen of the State of California and resides in Mission Viejo, California. Plaintiff Caplin and his wife, Sara Caplin, purchased a 2023 Volkswagen ID.4 from Capistrano VW in San Juan Capistrano, California for personal, family, or household purposes, on or about December 30, 2022. Plaintiff Caplin is the assignee of the claims of Sara Caplin. On or after March 18, 2026, Plaintiff Caplin received a recall notice from VW informing him of the Battery Defect. He subsequently brought his Class Vehicle to an

authorized VW dealer, where technicians installed a software update but did not replace the vehicle's HV battery and/or any of the HV battery's cell modules.

20. Plaintiff Timothy Y. Chen ("Plaintiff Chen") is a citizen of the State of California and resides in Piedmont, Alameda County, California. Plaintiff Chen leased a 2025 Volkswagen ID.4 from Volkswagen Marin in San Rafael, California for personal, family, or household purposes, on or about August 12, 2025, with a lease period of 24 months.

21. Plaintiff Robert Warren ("Plaintiff Warren") is a citizen of the State of California and resides in Dublin, Alameda County, California. Plaintiff Warren leased a 2023 Volkswagen ID.4 from Dublin, California for personal, family, or household purposes on or about February 3, 2024, with a lease period of 36 months. On or about March 20, 2026, Plaintiff Warren received a recall notice from VW informing him of the Battery Defect. He subsequently brought his Class Vehicle to an authorized VW dealer, where technicians installed a software update but did not replace the vehicle's HV battery and/or any of the HV battery's cell modules.

22. Plaintiff Alex Wilsey ("Plaintiff Wilsey") is a citizen of the State of Delaware and resides in Wilmington, Delaware. While residing in Delaware, Plaintiff Wilsey leased a 2024 Volkswagen ID.4 from Greely Nissan Volkswagen in Greely, Colorado for personal, family, or household purposes on or about January 16, 2025, with a lease period of 36 months. On or after March 23, 2026, Plaintiff

Wilsey received a recall notice from VW informing him of the Battery Defect. He subsequently brought his Class Vehicle to an authorized VW dealer, where technicians installed a software update but did not replace the vehicle's HV battery and/or any of the HV battery's cell modules.

**B. Defendant**

23. Defendant VWoA is a New Jersey corporation that does business throughout the United States, including in this District. VWoA's corporate headquarters is located in Herndon, Virginia. VWoA is a wholly-owned U.S. subsidiary of Volkswagen Aktiengesellschaft ("VWAG"), and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing and sale of Volkswagen automobiles nationwide.

24. Defendant and VWAG design, engineer, manufacture, market, lease, and/or sell vehicles. Defendant and VWAG market and distribute vehicles for lease and sale under the Volkswagen, Audi, Porsche, Skoda, SEAT, Lamborghini, and Bentley brands through authorized VW dealers located throughout the United States, including within this District.

25. At all times relevant to this action, Defendant, VWAG, and/or their agents manufactured, distributed, sold, leased, and warranted the Class Vehicles, containing the Battery Defect described herein, throughout the United States, including in this District. Defendant developed and disseminated the owner's

manuals and warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles, with the intent that such documents be purposely distributed throughout all fifty states, including New Jersey.

## IV. FACTUAL ALLEGATIONS

26. VW currently markets, leases, and sells two electric vehicle ("EV") models in the United States, one of which is the ID.4. "ID" in the naming represents "intelligent design, identity and visionary technologies" and the number 4 identifies the vehicle as an entrant in the compact SUV segment.[14] And at the heart of the ID. family "lies its fast-charging battery system."[15]

27. For model years 2023-2025, VW offered either the 62 kWh or the 82 kWh battery-equipped ID.4s, providing EPA-estimated ranges of 209 miles and 275 miles, respectively as of 2023.[16]

28. VW debuted the ID.4 in September 2020, and the first models became available in the United States, Europe, and China in early 2021.[17]

---

[14] Press Release, Volkswagen Reveals *ID*.4 Name for Its First Long-Range Electric Compact SUV, Volkswagen US Media Site (Mar. 3, 2020), https://media.vw.com/releases/1263.

[15] *The All-New ID.4: Model Specification*, Volkswagen Singapore (July 2024), https://autocatalogarchive.com/wp-content/uploads/2025/03/VW-*ID*.4-2025-SG.pdf.

[16] 2023 *ID*.4 Press Kit, Volkswagen US Media Site, https://media.vw.com/press-kits/2023-id4-press-kit (last visited Apr. 10, 2026).

[17] Press Release, The New Volkswagen *ID*.4 – World Premiere of the Fully Electrically Driven SUV, Volkswagen Newsroom (Sep. 23, 2020),

29. The ID.4 is Volkswagen's first all-electric SUV. A picture of the 2023 Volkswagen ID.4 is below:



30. After initially assembling ID.4s in Europe, VW began assembling ID.4s in Chattanooga, Tennessee in July 2022.[18] VW reported that it would aim to assemble 7,000 ID.4 vehicles per month at the new facility and increase output through 2023.[19]

https://www.volkswagen-newsroom.com/en/press-releases/the-new-volkswagen-id4-world-premiere-of-the-fully-electrically-driven-suv-6446.

[18] Press Release, Volkswagen Starts U.S. Assembly of All-Electric *ID*.4 Flagship in Chattanooga, Tennessee, PR Newswire (July 26, 2022), https://www.prnewswire.com/news-releases/volkswagen-starts-us-assembly-of-all-electric-id4-flagship-in-chattanooga-tennessee-301592882.html.

[19] *Id.*

31. In 2024 and 2023, VW sold 17,021 ID.4 units and 37,789 ID.4 units in the United States, respectively.[20] The Volkswagen ID.4 was the tenth-highest selling EV in the United States in 2025, having sold 22,373 units.[21]

32. Defendant provides New Vehicle Limited Warranty coverage and HV Battery Limited Warranty Coverage for the Class Vehicles. The New Vehicle Limited Warranty Coverage applies for 4 years or 50,000 miles and includes any repair to correct a defect in manufacturer's material or workmanship. The HV Battery Limited Warranty Coverage applies for 8-years or 100,000 miles and includes coverage for defects in material and workmanship for the Class Vehicles' HV battery.

**A. VW Marketed the Class Vehicles as Safe, Technologically-Advanced, and Environment-Friendly**

33. VW engages in direct marketing of the Class Vehicles to consumers, such as Plaintiffs and members of the Classes, via TV and radio commercials, print advertising, and the publication of vehicle brochures which are distributed through its network of authorized dealerships, in order to induce consumers to purchase or lease its vehicles. This comprehensive advertising campaign is ongoing.

---

[20] Press Release, Volkswagen of America Reports Q4 and Year-End Sales for 2024, Volkswagen US Media Site (Jan. 3, 2025), https://media.vw.com/releases/1840.

[21] Caleb Miller, *The 10 Bestselling EVs of 2025*, Car and Driver (Jan. 19, 2026), https://www.caranddriver.com/news/g64540955/bestselling-evs-2025/.

34. Defendant marketed the Volkswagen ID.4 as the "future of driving" and describe the vehicle as possessing "[c]harged up style, energized handling."[22]

35. VW's marketing of the ID.4 conveyed to consumers that they could have the both a fully electrically driven SUV and the space, flexibility, and other benefits that customers appreciate about SUVs.[23]

36. VW's promotional webpage for the ID.4 highlights several reasons to choose a Volkswagen, among which include the 291-mile EPA estimated range, two years of Electrify America Pass+ Membership that allows VW ID.4 owners to use more than 5,000 DC fast charging networks in North America, safety-enhancing technology, and two years of complimentary maintenance coverages.

37. VW also represented in a press release that, the ID.4 can be charged at home or when out and about "with direct current to cover the next 320 km (as per [Worldwide Harmonized Light Vehicles Test Procedure], at 125 kW) at a DC quick-charging station in around 30 minutes."[24]

---

[22] The 2026 *ID*.4 All-Electric SUV, Volkswagen Homepage, https://www.vw.com/en/models/id-4.html?---=%7B%22models_id-4_sectiongroup_1918728_featureappsection%22%3A%22%2F%3Fzip%3D19087%22%7D (last visited Apr. 10, 2026).

[23] Press Release, The New Volkswagen *ID*.4 – World Premiere of the Fully Electrically Driven SUV, Volkswagen Newsroom (Sep. 23, 2020), https://www.volkswagen-newsroom.com/en/press-releases/the-new-volkswagen-id4-world-premiere-of-the-fully-electrically-driven-suv-6446.

[24] Press Release, The New Volkswagen *ID*.4 – World Premiere of the Fully Electrically Driven SUV, Volkswagen Newsroom (Sep. 23, 2020),

38. Additionally, in its marketing material disseminated across its dealerships, VW represented that "SK On cells and modules charge 10% to 80% in about 30 minutes when charging at 170kW or higher" and referred to the Level 3 DC Fast Charging.[25]

39. In its Order Guide for 2025, VW also represented that the 170 kW DC fast charging capability for its 82 kWh battery-equipped vehicles came standard across all trims of 2025 ID.4s.[26]

40. Furthermore, VW's promotional webpage for the ID.4 further highlights the ease and convenience of charging the VW ID.4 and includes the below images on its webpage:[27]

---

https://www.volkswagen-newsroom.com/en/press-releases/the-new-volkswagen-id4-world-premiere-of-the-fully-electrically-driven-suv-6446.

[25] Volkswagen *ID*.4. The First Electric SUV for Everyone, Capital Volkswagen, https://www.capitolvw.com/volkswagen-id4-electric-vehicle/?srsltid=AfmBOork7cMhhQQFs9ReYjdUxuk4id51grq5QBMwrI96YwULI-aC-PQU (last visited Apr. 1, 2026).

[26] MY 2025 Retail Order Guide US *ID*.4, Emich Volkswagen: Volkswagen Order Guides, https://www.emichvw.com/vw-order-guides/?srsltid=AfmBOooMCiLtiKSn8H2MaO2cyZAuDqAks9gakym-xRp3NxZJpvHO77M- (last visited Apr. 1, 2026).

[27] The 2026 *ID*.4 All-Electric SUV, Volkswagen Homepage, https://www.vw.com/en/models/id-4.html?---=%7B%22models_id-4_sectiongroup_1918728_featureappsection%22%3A%22%2F%3Fzip%3D19087%22%7D (last visited Apr. 10, 2026).



2-year ID.4 Charging Plan included[19]



Plug&Charge[21]



At-Home Charging

41. VW also advertised that the 82 kWh battery in the 2023 Volkswagen ID.4 provides for an EPA-estimated range of up to 275 miles and "an EPA-estimated fuel economy rating of 115 MPGe in city driving; 99 MPGe on the highway; and 107 MPGe in combined city/highway driving."[28] However, without the ability to fully charge the vehicle, Plaintiffs and members of the Classes would not be able to achieve the full capabilities of the Class Vehicles as represented.

42. Defendant made these representations regarding the ID.4s when they knew or should have known that they were selling, and have sold, tens of thousands of Class Vehicles vulnerable to the Battery Defect that pose serious safety risks and that VW has indicated cannot be safely charged using DC 3 chargers or safely charged to their full capacity. These representations have helped Defendant conceal

[28] 2023 *ID*.4 Press Kit, Volkswagen US Media Site, https://media.vw.com/press-kits/2023-id4-press-kit (last visited Apr. 10, 2026).

the Battery Defect's existence in order to sell and lease more vehicles and avoid the financial responsibility to effectively repair and/or replace the defective condition.

**B. The Battery Defect**

43. The batteries in the Class Vehicles are manufactured by SKBA. VW ID.4 includes either a 62 kWh or 82kWh battery module made with components from SK On, the parent company of SKBA.

44. Like other batteries, lithium-ion batteries are made up, in pertinent part, of multiple power-generating compartments called "cells." Each cell contains the basic functional components of a battery: a positive electrode ("cathode"), a negative electrode ("anode"), and an electrolyte.[29]

45. The electrodes store lithium. The electrolyte carries lithium ions between electrodes.[30] When lithium ions flow from the anode to the cathode, energy is discharged from the battery cell in the form of electricity.[31] When the cell is charging, those ions flow in the opposite direction, or from cathode to anode.[32]

---

[29] Chris Woodford, *Lithium-ion batteries*, explainthatstuff, (updated Sep. 11, 2023), https://www.explainthatstuff.com/how-lithium-ion-batteries-work.html.

[30] *Id.*

[31] *Id.*

[32] *Id.*

46. A single cell cannot store nearly enough energy to power an automobile, so cells are grouped into modules and packs. Those modules and packs, together with control systems, constitute the complete battery.[33]

47. A module ordinarily contains an array of cells, sensors, controls, mounts, communications capabilities, protective safety devices, and cooling elements or cooling provisions.[34]

48. Beyond this, there are various methods of: (i) arranging the cells into arrays within the module; (ii) managing the flow of electrical current to and from the module or arrays within the module; and (iii) monitoring and managing the temperature of the cells within the module. Finally, control electronic and other components are also necessary to meet performance and safety requirements.[35]

49. Just as important as the design and safety features used in a lithium-ion battery pack is rigorous pre-launch testing.[36] The use of better safety systems and more rigorous testing would have prevented the reported thermal event and battery

---

[33] *See* NHTSA, *Lithium-Ion Battery Safety Issues for Electric and Plug-in Hybrid Vehicles* § 4 (Oct. 2017), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/12848-lithiumionsafetyhybrids_101217-v3-tag.pdf ("2017 NHTSA Report").

[34] *Id*. at § 4.1.1.

[35] *Id*. at § 4.

[36] *Id*. at § 8.

fire incidents in the Class Vehicles and the significant cost and inconvenience now visited upon Plaintiffs and members of the Class.

50. Most EVs, like the Class Vehicles, use lithium-ion batteries because of their "high power-to-weight ratio, high energy efficiency, good high-temperature performance, long life, and low self-discharge."[37]

51. VW has admitted that the Class Vehicles contain "battery cells in certain high-voltage (HV) battery cell modules . . .[which] may contain misaligned electrodes . . . . In certain situations, a misaligned electrode in the HV battery cell may lead to a fire."[38]

52. After reviewing damaged cell modules that were involved in Class Vehicle fires, the SKBA found that the damaged cell modules contained shifted cathodes.[39]

53. VW failed to adequately research, design, test, and manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and reasonably foreseeable manner.

---

[37] U.S. Dep't of Energy, *Batteries for Electric Vehicles*, https://afdc.energy.gov/vehicles/electric_batteries.html (last visited Apr. 10, 2026).

[38] Recall 25V-836; Recall 26V-028.

[39] Recall 25V-836; Recall 26V-028.

54. In particular, SDD software should have been installed in all Class Vehicles before sale and/or lease given the crucial role early detection of battery faults play in ensuring the safety of EVs,[40] and the Class Vehicles should have been equipped with HV batteries that were not prone to electrode misalignment.

**1. Recall 25V-836 Was Delayed and Under-Inclusive**

55. On January 18, 2024, VW received a field report of a fire in a Volkswagen ID.4 that was charging at a Level 3 DC charger.[41] After an on-site investigation into the vehicle and the charging apparatus on January 30, 2024, VW determined that the origin of the fire was within the HV battery.[42]

56. On July 2, 2024, VW was notified of a thermal event in California involving a parked Class Vehicle that was not charging.[43] After inspection, VW determined that the origin of the fire was within the HV battery, and the HV battery cell modules were sent to SKBA for analysis.[44]

---

[40] Jinwen Li, et al., *Efficient Battery Fault Monitoring in Electric Vehicles: Advancing from Detection to Quantification*, 313 Energy 134150 (Dec. 30, 2024), https://www.sciencedirect.com/science/article/abs/pii/S0360544224039288 ("Therefore, early detection of battery faults and providing quantitative warnings of potential fault onset are crucial for ensuring the safety of EVs.").

[41] Recall 25V-836.

[42] *Id.*

[43] *Id.*

[44] *Id.*

57. On October 6, 2024, VW was notified of another thermal event in California involving a parked Class Vehicle that was not charging.[45] The origin of the fire was determined to be within the HV battery, and SKBA identified that the cell modules had shifted electrodes.[46]

58. On December 6, 2024, VW was notified of another thermal event in Class Vehicles that occurred while driving.[47] After investigation, VW determined that the origin was within the HV battery.[48]

59. In June and July of 2025, SKBA conducted a computed tomography ("CT") analysis of the cell modules from the incidents, and along with VW investigated other potential causes but ultimately "refocused on the HV battery" as the source of the defect.[49]

60. On August 15, 2025, VW was informed of a thermal event in Colorado involving a Class Vehicle charging at a Level 3 DC charger.[50] While the root cause

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

of the fire was not determined, SKBA identified the cell modules to have shifted electrodes.[51]

61. In late September 2025, SKBA performed a Tear-Down Analysis of other damaged cell modules from Class Vehicles, which revealed shifted electrodes.[52] SKBA then looked at images from a CT analysis conducted earlier in June 2025 and recognized the shifted cathode in the CT images.[53]

62. On November 26, 2025, nearly two years after opening its first investigation into the HV battery fires in the Class Vehicles, VW raised the electrode misalignment issue to the Volkswagen Product Safety Committee and decided to issue Recall 25V-836.[54]

63. Recall 25V-836 described the defect as "[i]ndividual battery cells in certain high-voltage (HV) battery cell modules . . . [that] may contain misaligned electrodes" that may lead to a vehicle fire.[55]

64. Recall 25V-836 disclosed that 629 Volkswagen ID.4s, for model years 2023-2024, were potentially involved and that 100% percent of those vehicles identified may have the defect:

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

> The recall population was determined by production records. The supplier of the high voltage (HV) battery identified battery cells within a production period where a quality deviation (mis-aligned electrode) has been confirmed. Vehicles included in the recall have HV battery modules with the cells identified by the supplier within the identified production period; vehicles not included in this recall do not have HV battery modules with the cells identified by the supplier within the identified production period.[56]

65. Recall 25V-836 repeatedly acknowledges that VW had not identified the root cause of the fire caused in the HV battery.[57] The Remedy Owner Notification Letter merely informed owners that battery cells in certain HV battery modules may contain misaligned electrodes that may result in a fire and advised the owners to contact an authorized Volkswagen dealer to schedule a battery replacement:

---

[56] *Id.*

[57] *Id.*

**IMPORTANT SAFETY RECALL**

Volkswagen of America, Inc.
3800 Hamlin Road
Auburn Hills, MI 48326

I**I**I***************SINGLE-PIECE 48233
XXXXXXXXXXXXXXXXX xxxx
JOHN DOE
12345 YOUR STREET
HOMETOWN, MI 98765-4321

(barcode)

<MONTH YEAR>

**This notice applies to your vehicle:** <MODEL YEAR> <BRAND> <CARLINE>, <VIN>

**NHTSA:** 25V836

**Subject: Safety Recall 93EV – High-Voltage (HV) Battery Modules**

Dear Volkswagen Owner,

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Volkswagen has decided that a defect, which relates to motor vehicle safety, exists in certain 2023-2024 model year Volkswagen vehicles. Our records show that you are the owner of a vehicle affected by this action.

**What is the issue?**
Individual battery cells in certain high-voltage (HV) battery cell modules manufactured during a certain production period may contain misaligned electrodes. In certain situations, a misaligned electrode in the HV battery cell may lead to a fire.

**What will we do?**
To correct this defect, your authorized Volkswagen dealer will replace the potentially affected HV battery cell modules. This work will take up to one day to complete and will be performed for you free of charge. Please keep in mind that your dealer may need additional time for the preparation of the work, as well as to accommodate their daily workshop schedule.

**What should you do?**
Please contact your authorized Volkswagen dealer without delay to schedule this recall work.

Because the battery cell module(s) that need to be replaced under this recall have been pre-identified by the factory for each affected vehicle, this recall work must be performed only by a certified Volkswagen battery repair dealer.

Please visit vw.com and click on *Find a Dealer*, click on *Show Filter* and then select the *EV Repair (including Battery)* filter to locate the closest certified Volkswagen battery repair dealer to have this recall work completed.

**Precautions you should take:**
Owners may experience a loss of range and/or performance if the recall condition exists in the vehicle. If you have any vehicle concerns, please make an appointment to have the vehicle diagnosed by an authorized Volkswagen dealer.

**Until the recall remedy is performed, owners should take the following precautions:**

- **Set the vehicle's high-voltage battery system to an 80% state of charge limitation.**
- **Avoid using Level 3 DC chargers.**
- **Out of an abundance of caution, park the vehicle outdoors immediately after charging and do not leave the vehicle charging indoors overnight.**

**As a reminder, the vehicle owner's manual contains important information about vehicle charging. We encourage anyone who drives the vehicle to review the owner's manual to become familiar with this important information.**

93EV USA

66. Recall 25V-836 also advised (i) that the recalled vehicles should not be charged above 80%; (ii) that owners should avoid using Level 3 DC chargers; and

(iii) that owners should "park their vehicle outdoors immediately after charging and not leave the vehicle charging indoors overnight."[58]

67. According to Recall 25V-836, the proposed remedy was to "replace the potentially affected HV battery cell modules."[59] However, the remedy notification to owners was not scheduled until January 30, 2026.[60]

68. In December 2025, SKBA provided VW with updated investigational findings that revealed additional HV battery cell modules with shifted electrodes.[61] On December 15, 2025, VW amended Recall 25V-836, adding 318 more affected vehicles to the original 311.[62]

69. From December 2025 to January 2026, SKBA identified a second hardware issue in the Class Vehicles' HV batteries that could result in a different shifted electrode condition.[63] While there were no known field incidents involving this issue, VW and SKBA undertook a risk analysis.[64]

---

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] Recall 26V-028.

[62] *Id.*

[63] *Id.*

[64] *Id.*

70. On January 14, 2026, the VW Product Safety Committee decided to issue a new recall—Recall 26V-028—of vehicles with HV battery cell modules affected by the second electrode issue, but the remedy program remained the same.[65]

71. Recall 26V-028 identified 670 model year 2023 and 2024 Volkswagen ID.4 vehicles as potentially involved.[66]

72. Recall 26V-028 also advised (i) that the recalled vehicles be set to an 80% charge limitation; (ii) that owners should avoid using Level 3 DC chargers; and (iii) that owners should "park the vehicle outdoors immediately after charging and do not leave the vehicle charging indoors overnight."[67]

**2. Recall 26V-030**

73. One week later, on January 21, 2026, VW initiated a third safety recall of Volkswagen ID.4s affected by the Battery Defect—Recall 26V-030.[68] Recall 26V-030 covered nearly 44,000 2023-2025 Volkswagen ID.4s and identified "[d]efective high-voltage battery cell modules [that] may overheat, increasing the risk of a fire."[69] VW also admitted, "there appear to be thermal incidents outside of

---

[65] Recall 26V-028.

[66] *Id.*

[67] *Id.*

[68] Recall 26V-030.

[69] *Id.*

the ranges identified by the supplier as potentially having a defined hardware anomaly."[70]

74. Recall 26V-030 again acknowledged that VW and the supplier had not determined the root cause but identified that self-discharge detection software would have triggered a warning in advance of at least three known incidents.[71]

75. The remedy offered in Recall 26V-030 included a battery health check inspection and installation of updated SDD software on vehicles and replacement of potentially affected HV battery cell modules as needed.[72] VW claimed that the remedy was advised "out of an abundance of caution."[73]

76. In addition, on March 25, 2026, Autoblog reported that Volkswagen is recalling nearly 100,000 electric vehicles from its Volkswagen and Cupra brands built between February 2022 and August 2024 worldwide due to "potential issues with their high-voltage battery modules."[74] The proposed remedy is the same as the remedy proposed in the NHTSA recalls—"inspecting the high-voltage battery in

---

[70] *Id.*

[71] *Id.*

[72] Recall 26V-030.

[73] *Id.*

[74] Rex Sanchez, *VW Recalls Nearly 100,000 EVs Over Battery Fire Risk*, Autoblog (Mar. 25, 2026), https://www.autoblog.com/news/vw-recalls-nearly-100000-evs-over-battery-fire-risk.

affected vehicles for potentially faulty modules" and "receiv[ing] a software update, and if necessary, [replacing] individual battery modules."[75]

77. VW mailed recall notices to the owners and lessees of the Class Vehicles beginning on or around March 18, 2026. Shortly after March 18, 2026, Plaintiffs Baltodano, Caplin, Warren, and Wilsey received recall notices pursuant to Recall 26V-030 advising them to bring their Class Vehicle to an authorized Volkswagen dealer to perform a battery health check inspection and install updated Self Discharge Diagnosis software, and that "potentially affected HV battery cell module(s)" would be replaced.

78. Plaintiffs Baltodano, Caplin, Warren, and Wilsey brought their Class Vehicles to authorized Volkswagen dealers, where the vehicles' HV batteries were inspected and the updated SDD software was installed. The defective HV batteries in Plaintiffs Baltodano, Warren, and Wilsey's Class Vehicles were not replaced, nor were any of the HV battery cell modules.

**3. Recall 26V-630**

79. On October 1, 2026, VW issued Recall 26V-630, its fourth safety recall of Volkswagen ID.4s affected by the Battery Defect.[76] Recall 26V-630 covers 22,524 2023-2026 Volkswagen ID.4s produced between January 1, 2023 and

---

[75] *Id.*

[76] Recall 26V-630.

February 1, 2025, and states that "certain charging profiles combined with a state of charge over 80% may trigger thermal propagation within the high-voltage battery," which "may result in a vehicle fire."[77] The recall identifies SK Battery America Inc. as the supplier of the HV battery.[78]

80. Recall 26V-630 again acknowledges "[t]he root cause is unknown."[79] According to VW's chronology, on June 17, 2026, during its "ongoing review of HV battery thermal events in the field," VW's Product Safety Committee ordered a field study of complete HV battery systems from vehicles "that had not previously been included in its previous HV battery recall campaigns."[80] VW identified 22 claims in the United States between January 18, 2024 and August 7, 2026.[81] On September 23, 2026, with the root cause "still unknown," the Product Safety Committee decided to conduct the recall.[82]

81. VW determined the recall population in part using "available vehicle charging data," and excluded vehicles with cells "that have sufficiently recent and complete data indicating charging usage below the defined threshold."[83]

[77] *Id.* at 3.
[78] *Id.*
[79] *Id.*
[80] *Id.* at 2.
[81] *Id.* at 3.
[82] *Id.*
[83] *Id.* at 1.

82. While the report notes that VW reviewed "vehicle assembly records, high-voltage battery traceability information, supplier production records, and available vehicle charging data," VW nevertheless was unable to determine a root cause.[84]

83. Recall 26V-630 offers no remedy. VW admitted that "[t]he root cause and repair solution still needs to be identified" and that "[t]he final remedy remains under development."[85] Instead, VW advised owners to limit charging to 80% and, as an "interim risk-reduction measure," will send owners a "warning sticker" they can place "at specific places at the vehicle" to remind drivers not to charge the HV battery above 80%.[86] VW will also configure "some vehicles" to "limit the maximum state of charge" of the HV battery to 80% "[d]epending on the vehicle configuration and online connectivity."[87]

**C. VW Knew or Should Have Known About the Battery Defect Long Before It Disclosed the Problem**

84. Despite the VW investigations beginning in January 2024, VW knowingly, actively, and affirmatively omitted and/or concealed the existence of the Battery Defect to increase profits by selling and leasing additional Class Vehicles. Knowledge and information regarding the Battery Defect and the associated safety

---

[84] *Id.*

[85] *Id.* at 3.

[86] *Id.*

[87] *Id.*

risk was in the exclusive and superior possession of Defendant and their dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the Battery Defect through due diligence. Based on pre-production testing and design failure mode analysis, *inter alia*,[88] Defendant knew or should have known of the Battery Defect in the Class Vehicles and fraudulently concealed the Battery Defect from Plaintiffs and members of the Classes.

85. As set forth below, VW has long known or should have known that the HV batteries in its ID.4s were susceptible to fire risk. VW knew or should have known about the Battery Defect before it began selling the Class Vehicles given the rigorous pre-launch testing VW should have performed on the HV batteries in the Class Vehicles.

86. The Battery Defect was inherent in each of the Class Vehicles and was present at the time of sale or lease.

87. Defendant knew or should have known about the Battery Defect present in the Class Vehicles, along with the corresponding safety risk, and concealed this information from Plaintiffs and members of the Classes at the time of sale or lease, repair, and thereafter.

---

[88] Further, at least one earlier complaint was filed with NHTSA concerning the Battery Defect. On March 22, 2023, a driver reported that his 2023 Volkswagen *ID*.4 had caught fire while charging on a DC fast charger on March 10, 2023. NHTSA ID No. 11513315.

88. If Plaintiffs and members of the Classes had known about the Battery Defect at the time of sale or lease, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles or would have paid less for them.

89. The delay, inconclusiveness, and under-inclusiveness of VW's recalls have allowed Defendant to maximize sales of the Class Vehicles.

90. Safety concerns related to unexpected fires connected with lithium-ion batteries are well-documented and were known to VW at the time it designed, manufactured, and sold the Class Vehicles.[89]

91. Well before the first Class Vehicle fire VW investigated in January 2024, many scientific and engineering articles discussed the thermal-runaway-related safety concerns of lithium-ion cells and battery packs and proposed solutions.[90] There are also publications examining how shifted electrode assembly in lithium-ion batteries can lead to thermal runaway.[91]

---

[89] 2017 NHTSA Report at 2-24 through 2-27, 3-9-3 through 3-11 (discussing fire risks of HV lithium-ion batteries in vehicles).

[90] *See, e.g.*, Jianwu Wen, et al., *A Review on Lithium-Ion Batteries Safety Issues: Existing Problems and Possible Solutions*, Am. Scientific Publishers (2012), https://www.sciencedirect.com/science/article/pii/S2095495620307075; Xuning Feng, et al, *Thermal runaway mechanism of lithium ion battery for electric vehicles: A review*, ScienceDirect, (2018) https://www.sciencedirect.com/science/article/abs/pii/S2405829716303464.

[91] *See* Donal P. Finegan, et al., *Identifying the Cause of Rupture of Li-Ion Batteries During Thermal Runaway*, 5 ADV. SCI. 1700369 (2018), https://pmc.ncbi.nlm.nih.gov/articles/PMC5770664/.

92. A thermal runaway "is a phenomenon in which the lithium-ion cell enters an uncontrollable, self-heating state."[92] Thermal runaway can result in "extremely high temperatures, violent cell venting, smoke and fire."[93]

93. In October 2017, NHTSA distributed the 2017 NHTSA Report that summarized an assessment of potential lithium-ion battery vehicle safety issues.[94] The 2017 NHTSA Report explains:

> [T]hermal runaway of a Li[thium]-ion cell is one of the fundamental failure mechanisms leading to safety hazards from Li[thium]-ion batteries. Cell heating is normal, but temperatures must be maintained within a predetermined safe operating level. Thermal runaway is most likely to be realized when an event occurs that results in rapid heating of the cell that outpaces the rate of heat dissipation by the cell. Rapid heating may be caused by internal or external short circuits, overcharging, and general use [among other things].[95]

As the Report further notes, "[t]he thermal and mechanical design of a cell strongly influences its ability to control and dissipate heat, thereby influencing its safety performance."[96]

---

[92] *What is Thermal Runaway?*, Underwriters Laboratories (Aug. 24, 2021), https://ul.org/research/electrochemical-safety/getting-started-electrochemical-safety/what-causes-thermal#:~:text=Defects%20in%20the%20cell%20that,can%20result%20in%20thermal%20runaway.

[93] *Id.*

[94] 2017 NHTSA Report, *supra* note 16.

[95] *Id.* at § 3.2.

[96] *Id.*

94. When thermal runaway spreads from one cell to adjacent cells in the module, the result is what appears to be happening in the Class Vehicles—thermal runaway propagation, causing spontaneous combustion that leads to fires and explosions even when the cars are parked. In other words, "the rapid and extreme rise in temperature (thermal runaway) can easily propagate to nearby cells in a domino effect that has been dubbed thermal runaway propagation."[97]

95. The 2017 NHTSA Report, which documented well-known battery fire risks associated with lithium-ion batteries used in EVs, cited to the vast body of academic and engineering studies on those risks and recommended rigorous design and testing protocols to protect against those risks. All of this was or should have been known to VW at the time it launched the Class Vehicles.

96. The 2017 NHTSA Report reiterated that all car manufacturers have a duty "to conduct their own due diligence safety testing and analysis, while the industry is working to develop a consensus."[98]

97. The fire risk associated with lithium-ion batteries is central focus of the 2017 NHTSA Report, which recommended protection methods and laid out rigorous

---

[97] Alysha Liebscher and Gary Gayman, *Preventing Thermal Runaway in Electric Vehicle Batteries*, Machine Design (Dec. 26, 2018) https://www.machinedesign.com/materials/article/21837402/preventing-thermal-runaway-in-electric-vehicle-batteries.

[98] 2017 NHTSA Report, *supra* note 16, at 11-4.

testing requirements to mitigate that risk.[99] The major cause of fires arising from lithium-ion batteries is the propagation of thermal runaway.

98. In addition to the 2017 NHTSA Report, at the time VW launched the first ID.4s in 2021, standards and safety testing protocols had been set forth for lithium-ion batteries and vehicles that use them, including those promulgated by the Society for Automotive Engineers, the International Organization for Standardization, Underwriters Laboratories, the Institute for Electrical and Electronics Engineers, the United Nations Economic Commission for Europe, and Sandia National Laboratories for the FreedomCAR program.[100]

99. These standards and testing protocols provided VW with guidelines for design and laboratory testing to ensure the safety of lithium-ion batteries in the Class Vehicles.

100. All vehicle manufacturers, including VW, routinely monitor and analyze NHTSA complaints to determine whether vehicles or components should be recalled due to safety concerns. Thus, on information and belief, VW has knowledge of all NHTSA complaints filed concerning the vehicles it manufactures, including the Class Vehicles. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

---

[99] *See id.* at xvi; *see also id.* at Ch. 6 (management and control systems), 8-10 (testing, "gap assessments," and "hazards, risks and risk mitigation strategies").

[100] 2017 NHTSA Report, *supra* note 16, at 8-1.

101. VW has admitted that it is aware of *at least six* fires between January 2024 and August 2025 connected with the HV battery in the Class Vehicles.[101]

102. Knowledge and information regarding the Battery Defect were in the exclusive and superior possession of Defendant, and that information was not provided to Plaintiffs and members of the Classes. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, field reports, and testing performed in response to reported thermal events and fires, *inter alia*, Defendant was aware (or should have been aware) of the Battery Defect in the Class Vehicles and fraudulently concealed the Battery Defect and safety risk from Plaintiffs and members of the Classes.

103. Defendant knew, or should have known, that the Battery Defect and the associated safety risk was material to owners and lessees of Class Vehicles and were not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles or within the applicable warranty periods.

104. Notwithstanding Defendant's exclusive and superior knowledge of the Battery Defect, Defendant failed to disclose the Battery Defect to Plaintiffs and

[101] This includes one complaint that was filed with NHTSA on March 22, 2023 regarding a 2023 Volkswagen *ID*.4 that caught on fire on March 10, 2023 while charging on a DC fast charger. NHTSA ID No. 11513315.

members of the Classes at the time of purchase or lease of the Class Vehicles (or within a reasonable time of learning of the fires caused by the Battery Defect) and continued to sell and lease the Class Vehicles containing the Battery Defect. Defendant intentionally concealed that the Battery Defect presents a safety risk to consumers, including Plaintiffs and members of the Class, and the public.

**D. Plaintiffs and Members of the Classes Suffered an Injury**

105. Plaintiffs and members of the Classes suffer ongoing harm as a result of the Battery Defect in the Class Vehicles.

106. To date, VW has not provided a remedy that eliminates the Battery Defect in the Class Vehicles other than an offer to install SDD software, and, in limited instances, to replace certain HV battery cell modules.

107. Instead, VW has advised owners and lessees of some of the Class Vehicles to "set their vehicle's high-voltage battery system to a 80% state of charge limitation; … avoid using Level 3 DC chargers; … park their vehicles outdoors immediately after charging and not leave their vehicles charging indoors overnight" until the remedy is performed.[102]

108. Without the ability to fully recharge, these Class Vehicles, can only be operated at maximum 80% of its full capacity. And without the ability to use fast charging systems or to charge the vehicle overnight, owners and lessors must spend

[102] Recall 25V-836 at 4; Recall 26V-028 at 4.

hours waiting for their cars to charge. An EV that does not allow fast charging or does not allow a full 100% charge is not fit for its ordinary purpose. Although they cannot safely use their vehicles—or even safely park them in their own garages—owners and lessees of the Class Vehicles must continue to make loan, lease, and insurance payments for the Class Vehicles.

109. Additionally, VW will be configuring certain online-connected vehicles to limit the maximum state of charge of the HV battery to 80%.

110. Plaintiffs and members of the Classes are injured in fact, incurred damages, and have suffered ascertainable losses in money and property because of the Battery Defect. Had Plaintiffs and members of the Classes known of the Battery Defect, they would not have purchased or leased the Class Vehicles, would have paid substantially less for them, or would have purchased or leased non-EV vehicles, which are significantly less expensive.

## V. TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

111. Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Battery Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Class Vehicles and could not reasonably discover the Battery Defect or Defendant's deception with respect to the Battery Defect.

112. Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or that the Class Vehicles contained the Battery Defect and corresponding safety risk. As alleged herein, the existence of the Battery Defect was material to Plaintiffs and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered, through the exercise of reasonable diligence, the existence of the Battery Defect or that Defendant was concealing the defect.

113. At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality, and grade of the Class Vehicles and to disclose the Battery Defect and corresponding safety risk.

114. Defendant knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the Classes reasonably relied on Defendant's knowing, active, and affirmative concealment.

115. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## VI. CLASS ACTION ALLEGATIONS

116. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class and Sub-Classes (together, the "Classes"):

> **Nationwide Class:** All persons or entities who purchased or leased a Class Vehicle (the "Nationwide Class" or the "Class").
>
> **California Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of California (the "California Sub-Class").
>
> **Colorado Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of Colorado (the "Colorado Sub-Class").
>
> **Delaware Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of Delaware (the "Delaware Sub-Class").
>
> **Florida Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of Florida (the "Florida Sub-Class").

117. Excluded from the Class and Sub-Classes are Defendant and its parents, subsidiaries, and corporate affiliates. Plaintiffs reserve the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information and reserves the right to establish further sub-classes where appropriate.

118. The Class and Sub-Classes are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are at least thousands of proposed members of the Classes.

119. Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members. The common and predominating questions of law and fact include, but are not limited to:

a. Whether the Class Vehicles contain the Battery Defect;
b. Whether the Battery Defect is a design defect and/or a defect in material, manufacturing, and/or workmanship;
c. Whether the Battery Defect in the Class Vehicles presents a safety risk;
d. Whether and when Defendant knew or should have known about the Battery Defect;
e. Whether Defendant knew or should have known that the Battery Defect in the Class Vehicles presents a safety risk;
f. Whether Defendant had a duty to disclose the Battery Defect;
g. Whether Defendant breached its duty to disclose the Battery Defect;
h. Whether Defendant intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the standard, quality, or grade of the Class Vehicles and/or the Battery Defect;
i. Whether Defendant negligently omitted material facts concerning the standard, quality, or grade of the Class Vehicles and/or the Battery Defect;
j. Whether Defendant made material omissions concerning the standard, quality, or grade of the Class Vehicles and/or the Battery Defect;

k. Whether members of the Classes would pay less for a Class Vehicle if Defendant, at the time of purchase or lease, disclosed the Battery Defect;

l. Whether members of the Classes would have purchased or leased a Class Vehicle if Defendant, at the time of purchase or lease, disclosed the Battery Defect;

m. Whether Defendant actively concealed material facts from Plaintiffs and members of the Classes in order to, *inter alia*, sell more Class Vehicles;

n. Whether Defendant breached its express and/or implied warranties to Plaintiffs and members of the Classes;

o. Whether Defendant violated the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

p. Whether Defendant violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.;*

q. Whether Defendant violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.*;

r. Whether Defendant violated the Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101, *et seq.*;

s. Whether Defendant violated the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq.*;

t. Whether Defendant violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; and

u. Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

120. Plaintiffs' claims are typical of the claims of the Class and Sub-Classes that Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Class and Sub-Classes sustained damages arising out of the same unlawful actions and conduct by Defendant.

121. Plaintiffs are willing and prepared to serve the Class and Sub-Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and Sub-Classes and have no interest adverse to or in conflict with the interests of the other members of the Classes.

122. Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Class and Sub-Classes. Plaintiffs will undertake to represent and protect the interests of absent members within the Class and Sub-Classes and will vigorously prosecute this action.

123. Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action

and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

124. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiffs and the other Class and Sub-Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Class and Sub-Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

125. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

126. The Class and Sub-Classes may also be certified under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class and Sub-Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class and Sub-Classes.

127. The interest of members within the Class and Sub-Classes individually controlling the prosecution of separate actions is theoretical and not practical. The Class and Sub-Classes have a high degree of similarity and is cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

128. The nature of notice to the proposed Class and Sub-Classes is contemplated to be by direct mail upon certification of the Class and Sub-Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers, and/or on the internet.

## VII. CLAIMS FOR RELIEF

**COUNT I**
**Violation of the Magnuson-Moss Warranty Act ("MMWA")**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of All Plaintiffs and the Nationwide Class and the California, Colorado, Delaware, and Florida Sub-Classes)**

**[WITHDRAWN]**

**COUNT II**
**Breach of Express Warranty**
**(On behalf of All Plaintiffs and the Nationwide Class and the California, Colorado, Delaware, and Florida Sub-Classes)**

129. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

130. Plaintiffs bring this count individually and on behalf of all members of the Classes.

131. Defendant marketed the Class Vehicles as safe, reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and members of the Classes' decisions to purchase or lease the Class Vehicles. These statements helped conceal the existence of the Battery Defect and its corresponding safety risk.

132. Defendant is and was at all relevant times merchants and sellers of motor vehicles within the meaning of the Uniform Commercial Code. With respect to leases, Defendant is and was at all relevant times lessors of motor vehicles within the meaning of the Uniform Commercial Code.

133. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

134. In connection with the purchase and lease of each of the Class Vehicles, Defendant provides New Vehicle Limited Warranty coverage and HV Battery Limited Warranty Coverage for the Class Vehicles. The New Vehicle Limited Warranty Coverage applies for 4 years or 50,000 miles and includes any repair to

correct a defect in manufacturer's material or workmanship. The HV Battery Limited Warranty Coverage pertains to the Class Vehicles' HV battery applies for 8-years or 100,000 miles and includes coverage for defects in material and workmanship.

135. Under the express warranties provided to Plaintiffs and members of the Classes, Defendant promised to repair or replace covered components of the Class Vehicles, including the HV Battery, arising out of defects in materials and/or workmanship, including the Battery Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendant breached these express warranties.

136. Defendant's express warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased or leased their Class Vehicles.

137. The Battery Defect at issue in this litigation was present at the time the Class Vehicles were sold to Plaintiffs and members of the Classes.

138. Plaintiffs relied on Defendant's express warranties, which were a material part of the bargain, when purchasing his Class Vehicle.

139. Plaintiffs and members of the Classes had no knowledge of the existence of this Battery Defect and the associated safety hazard at the time of their purchase or lease of the Class Vehicles.

140. Under the express warranties, VW was obligated to correct the Battery Defect in the Class Vehicles.

141. Defendant breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied, including the HV Battery.

142. On information and belief, Defendant has not suitably repaired or replaced the Battery Defect free of charge for Plaintiffs and members of the Classes.

143. The Defendant further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, design, and manufacture.

144. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, design, and/or manufacturing defects which cause a their HV batteries to experience thermal events and fires.

145. Defendant was provided notice of the Battery Defect by field reports and through its own testing. Affording Defendant further opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant has known of and concealed the Battery Defect and has failed to provide a suitable repair or replacement of the Battery Defect free of charge within a

reasonable time. Defendant's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for their actions.

146. Defendant provided warranties directly to Plaintiffs and members of the Classes, and Plaintiffs and members of the Classes are the intended beneficiaries of Defendant's express and implied warranties. The dealers were not intended to be the ultimate consumers of their vehicles and have no right under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

147. Any attempt by Defendant to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Defendant's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and the members of the Classes did not determine these limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Battery Defect posed a safety hazard.

148. The Defendant knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and members of the Classes were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

149. Plaintiffs and members of the Classes have complied with all obligations under the express warranties, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

150. Because Defendant has issued recalls for Class Vehicles with the Battery Defect, Defendant cannot now deny that the express warranties cover the Battery Defect.

151. Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Classes whole, rendering it null and void.

152. As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Classes have been damaged and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles.

153. Finally, because of Defendant's breach of express warranties as set forth herein, Plaintiffs and members of the Classes assert, as additional and/or

alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## Breach of Implied Warranty of Merchantability
## (On behalf of All Plaintiffs and the Nationwide Class and the California, Colorado, Delaware, and Florida Sub-Classes)

154. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

155. Plaintiffs bring this count individually and on behalf of all members of the Classes.

156. Defendant is and was at all relevant times "merchants" and "sellers" of motor vehicles within the meaning of the Uniform Commercial Code.

157. With respect to leases, Defendant is and was at all relevant times "lessor[s]" motor vehicles within the meaning of the Uniform Commercial Code

158. The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code.

159. Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

160. Plaintiffs and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail

sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, VW was the manufacturer, distributor, warrantor, lessor, and/or seller of the Class Vehicles. VW knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. VW knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and members of the Classes, with no modification to their defective HV batteries.

161. Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and HV batteries that were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their HV batteries would be fit for their intended use while the Class Vehicles were being operated.

162. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Battery Defect—(at the time of sale or lease and thereafter), and present a safety hazard to drivers and occupants. Defendant knew or should have known of

this defect at the time these sale transactions occurred. Thus, Defendant breached its implied warranty of merchantability.

163. Defendant cannot disclaim its implied warranty as it knowingly sold or leased a defective product. Defendant was provided notice of the Battery Defect by field reports and through its own testing. Affording Defendant further opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Battery Defect and, on information and belief, has failed to repair the Battery Defect free of change.

164. Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Battery Defect posed a safety hazard.

165. Plaintiffs and members of the Classes have complied with all obligations under the warranty, or otherwise have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

166. Defendant provided warranties directly to Plaintiffs and members of the Classes, and Plaintiffs and members of the Classes are the intended beneficiaries of the Defendant's implied warranties. The dealers were not intended to be the ultimate

consumers of their vehicles and have no right under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

167. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs and members of the Classes have been damaged and continue to suffer damages, including economic damages, at the point of sale or lease and diminution of value of their Class Vehicles.

168. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

**COUNT IV**
**Fraudulent Concealment**
**(On behalf of All Plaintiffs and the Nationwide Class and the California, Colorado, Delaware, and Florida Sub-Classes)**

169. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

170. Plaintiffs bring this count individually and on behalf of all members of the Classes.

171. Defendant intentionally and knowingly concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the presence of the Battery Defect in the Class Vehicles, with the intent that Plaintiffs and members of the Classes rely on Defendant's omissions. As a direct

result of Defendant's fraudulent conduct, Plaintiffs and members of the Classes have suffered actual damages.

172. Defendant knew or should have known (at the time of sale or lease and thereafter) that the Class Vehicles contained the Battery Defect, concealed the Battery Defect, and never intended to repair or replace the Battery Defect during the warranty periods. To date, Defendant has not provided Plaintiffs or members of the Classes with a repair or remedy that will eliminate the Battery Defect.

173. Defendant owed a duty to disclose the Battery Defect and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the Battery Defect. Rather than disclose the Battery Defect, Defendant intentionally and knowingly concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the presence of the Battery Defect, to sell additional Class Vehicles.

174. The fact that the Battery Defect causes HV batteries in the Class Vehicles to fail and cause thermal events and fires is material because Plaintiffs and members of the Classes had a reasonable expectation that the Class Vehicles would not expose them and other vehicle occupants to such a safety hazard. No reasonable consumer expects a vehicle to be designed, manufactured, and assembled such that the HV battery would unexpectedly fail and cause the vehicle to catch fire.

175. Defendant intentionally and knowingly concealed and suppressed material facts from regulators and consumers regarding the Battery Defect. Defendant was aware of the Battery Defect by at least January 30, 2024, when it determined that the origin of a Class Vehicle fire was within the HV battery.

176. Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Battery Defect, or would have paid less for the Class Vehicles.

177. Defendant knew its concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendant knew its concealment and suppression of the Battery Defect would sell more Class Vehicles. Further, Defendant intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles, in order to increase profits.

178. Defendant acted with fraudulent intent when it omitted information regarding the Battery Defect in order to continue profiting from sale of the Class Vehicles and when it offered under-inclusive and insufficient remedies addressing the Battery Defect.

179. Defendant owed Plaintiffs and the members of the Classes a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the

devaluing of safety and performance, because Plaintiffs and members of the Classes relied on Defendant's material representations that the Class Vehicles they were purchasing were safe and free from defects.

180. The aforementioned concealment was material because if it had been disclosed Plaintiffs and members of the Classes would not have bought or leased the Class Vehicles or would not have bought or leased the Class Vehicles at the prices they paid.

181. Plaintiffs and members of the Classes relied on Defendant's reputation—along with Defendant's failure to disclose the faulty and defective nature of the Class Vehicles—in purchasing or leasing the Class Vehicles.

182. Plaintiffs and members of the Classes reasonably relied upon Defendant's knowing concealment and omissions. A reasonable consumer would not have expected that the Class Vehicles contain HV batteries that are prone to thermal events and fires. Defendant knew that reasonable consumers expect that their vehicles have working airbags, and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

183. As a direct and proximate result of Defendant's omissions and active concealment of material facts regarding the Battery Defect and associated safety

hazard, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

184. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and members of the Classes. Plaintiffs and members of the Classes are therefore entitled to an award of punitive damages.

**COUNT V**
**Negligent Misrepresentation**
**(On behalf of All Plaintiffs and the Nationwide Class and the California, Colorado, Delaware, and Florida Sub-Classes)**

185. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

186. Plaintiffs bring this count individually and on behalf of all members of the Classes.

187. Defendant owed a duty to disclose the Battery Defect and its corresponding safety risk to Plaintiffs because Defendant possessed superior and exclusive knowledge regarding the Battery Defect and associated risks.

188. Defendant negligently omitted material facts including the standard, quality, and grade of the Class Vehicles and/or the presence of the Battery Defect in

the Class Vehicles. As a direct result of Defendant's negligent conduct, Plaintiffs and members of the Classes have suffered actual damages.

189. The Battery Defect is material to Plaintiffs and members of the Classes because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not contain a defect, such as the Battery Defect, that exposes them and other vehicle occupants to a safety risk. No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials, or workmanship, such as the Battery Defect, that can cause the batteries to fail, causing Class Vehicles to suddenly catch fire.

190. Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles but for Defendant's negligent omissions of material facts regarding the nature and quality of the Class Vehicles and/or the existence of the Battery Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiffs and members of the Classes justifiably relied upon Defendant's negligent omissions of materials facts.

191. As a direct and proximate result of Defendant's negligent omissions or misrepresentation of material facts regarding the standard, quality, or grade of the Class Vehicles and/or the presence of the Battery Defect and corresponding safety risk, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT VI**
**Violation of California Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq*.**
**(On behalf of Plaintiffs Caplin, Chen, and Warren and the California Sub-Class)**

192. Plaintiffs Caplin, Chen, and Warren incorporate by reference each allegation as if fully set forth herein.

193. Plaintiffs Caplin, Chen, and Warren bring this Count individually and on behalf of the California Sub-Class.

194. The CLRA "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

195. Plaintiffs Caplin, Chen, and Warren and members of California Sub–Class are persons within the context of the CLRA, *see* Cal. Civ. Code § 1761(d), who purchased or leased the Class Vehicles for personal, family, or household use.

196. The Class Vehicles are goods within the meaning of Cal. Civ. Code § 1761(a).

197. Defendant violated and continue to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that the Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code § 1770.

198. Defendant also violated the CLRA by actively concealing the material fact that the Class Vehicles possessed the Battery Defect and its corresponding safety hazard and/or transferring the cost of repair or replacement of the Battery Defect to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class.

199. The fact that the Battery Defect exists in the Class Vehicles and exposes consumers to a corresponding safety hazard is material because Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class had a reasonable expectation that the vehicles would not suffer from a defect that can cause the Class Vehicles to catch fire.

200. Defendant has knowingly and willfully engaged in deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' Battery Defect and corresponding safety risk in connection with the sale, lease, and/or advertisement of Class Vehicles. Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

201. Defendant fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiffs Caplin, Chen, and Warren and members of the

California Sub-Class that the HV battery in the Class Vehicles would not require maintenance, repair or replacement and did not present a safety risk.

202. Upon information and belief, Defendant's decision to fraudulently, intentionally, negligently, and/or recklessly misrepresent to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class that the HV Battery in the Class Vehicles would not require maintenance, repair or replacement and did not present a safety risk was made in California.

203. Information regarding the Battery Defect as described in this Complaint is material to consumers in that the defect results in exorbitant repair or replacement costs and poses a significant safety risk because it can cause the Class Vehicles to catch fire.

204. Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety hazard to Plaintiffs Caplin, Chen, and Warren and the members of the California Sub-Class.

205. As a proximate and direct result of Defendant's violations of the CLRA, Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class have suffered diminution of Class Vehicle resale value, increased repair and maintenance costs, and other substantial monetary damages and inconvenience.

206. With this filing, and on this Count, Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class seek an order enjoining Defendant's unfair and deceptive practices.

207. Defendant's violations of the CLRA were willful and oppressive.

208. Plaintiffs Chen, Warren, and Caplin (as a member of the California Sub-Class) have provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a) by letter dated May 13, 2026. Because more than 30 days have passed, and Defendant has failed to remedy its violations of the CLRA, Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class are entitled to seek monetary relief for Defendant's violation of the CLRA.

209. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class seek actual damages, punitive damages, statutory damages, restitution, attorneys' fees, and any other relief proper under the CLRA. *See* Cal. Civ. Code § 1780.

**COUNT VII**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of Plaintiffs Caplin, Chen, and Warren and the California Sub-Class)**

210. Plaintiffs Caplin, Chen, and Warren incorporate by reference each allegation as if fully set forth herein.

211. Plaintiffs Caplin, Chen, and Warren bring this Count individually and on behalf of the California Sub-Class.

212. As alleged herein, Defendant has violated the UCL by engaging in unlawful, unfair and fraudulent business acts or practices.

213. In violation of the UCL, Defendant employed unfair, unlawful, and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Defendant knowingly concealed, suppressed, and/or omitted material facts regarding the Battery Defect and corresponding safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class.

214. Defendant actively suppressed the fact of Battery Defect's existence in Class Vehicles and that it presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects. Further, Defendant employed unfair, unlawful, and fraudulent business practices to deny repair or replacement of the HV Battery within a reasonable time in violation of the UCL.

215. Upon information and belief, Defendant's decision to actively suppress the fact of the Battery Defect's existence in Class Vehicles and its corresponding safety hazard was made in California. Further, Defendant's decision to employ

unfair, unlawful, and fraudulent business practices to deny repair or replacement of the defective HV battery within a reasonable time in violation of the UCL were made in California.

216. Defendant breached the CLRA and the Song-Beverly Consumer Warranty Act as alleged herein in violation of the UCL.

217. Defendant's unfair, unlawful, and fraudulent business practices were likely to deceive a reasonable consumer. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class had no reasonable way to know that Class Vehicles contained the Battery Defect and that the Class Vehicles were defective in materials, workmanship, design, and/or manufacture and posed a corresponding safety risk. Defendant possessed superior knowledge as to the quality and characteristic of the Class Vehicles, including the Battery Defect and its associated safety risk, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as did Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class.

218. Defendant intentionally and knowingly misrepresented and omitted facts regarding the Battery Defect in the Class Vehicles and its associated safety hazard with the intent to mislead Plaintiffs Caplin, Chen, and Warren and the members of the California Sub-Class. Defendant knew, or should have known, that

the Class Vehicles possessed the Battery Defect and exposes consumers to a corresponding safety hazard.

219. Defendant owed a duty to disclose the Battery Defect and its corresponding safety hazard to Plaintiffs Caplin, Chen, and Warren and the members of the California Sub-Class because Defendant possessed superior knowledge regarding the defect and the corresponding safety hazard. Defendant also owed a duty to disclose the Battery Defect because Defendant made partial representations regarding the safety of the Class Vehicles and thus owed a duty to reveal the complete truth to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class. Defendant had a duty to disclose any information relating to the safety, quality, functionality, and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.

220. Once Defendant made representations to the public about safety, quality, functionality, and reliability, Defendant was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. Rather than disclose the Battery Defect, Defendant engaged in unfair, unlawful, and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the defective HV battery.

221. Defendant's unfair, unlawful, and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Battery Defect were intended to mislead consumers and misled Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class.

222. At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Battery Defect and its corresponding safety hazard were material to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class. When Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects that pose an unavoidable safety hazard. Had Defendant disclosed that the Class Vehicles contained the Battery Defect and/or pose an unavoidable safety hazard, Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

223. Defendant had a continuous duty to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class to refrain from unfair, unlawful, and fraudulent practices under the UCL and to disclose the Battery Defect and associated safety hazard. Defendant's unfair, unlawful, and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Battery

Defect and corresponding safety hazard are substantially injurious to consumers. As a result of Defendant's knowing, intentional concealment and/or omission of the Battery Defect and associated safety hazard in violation of the UCL, Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class have suffered damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, loss of the benefit of the bargain and diminished value of their vehicles as a result of Defendant's unfair, unlawful, and fraudulent acts and practices in the course of its business.

224. Defendant has knowingly and willfully engaged in the unfair, unlawful, and fraudulent business practices alleged herein. Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Battery Defect and corresponding safety hazard.

225. Defendant's unfair, unlawful, and fraudulent acts and practices have harmed and continue to harm Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class, have negatively affected the public interest, and present a continuing safety hazard to Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class.

226. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class lack an adequate remedy at law because the scope of actionable

misconduct under the UCL is broader than the other causes of action asserted herein. Because their UCL claim requires a lesser showing of culpable conduct than Plaintiffs Caplin's, Chen's, and Warren's legal claims, Plaintiffs may ultimately prevail only on their equitable claims.

227. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class also seek injunctive relief to enjoin Defendant's unfair, unlawful, and fraudulent practices, including the concealment, suppression, or omission of material facts regarding the Battery Defect and denial of repair or replacement of the HV Battery. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

228. Unless and until Defendant is enjoined by an order of this Court, Defendant will continue to cause injury to the general public and violate the laws of California by continuing the unlawful and deceptive practices alleged herein. Plaintiffs Caplin, Chen, and Warren, on behalf of the general public, have no other adequate remedy at law to ensure compliance with Cal. Bus. & Prof. Code § 17200, *et seq.* going forward. Plaintiff also seeks restitution, as the equitable relief sought herein is more adequate, certain, prompt, and efficient than any legal remedy available. Further, because a public injunction is available under the UCL, damages

will not adequately benefit the general public in a manner equivalent to an injunction.

229. Additionally, discovery—which has not yet been provided—may reveal that the claims asserted here providing legal remedies are inadequate. At this time, forcing an election of remedies at the initial pleadings stage, in the absence of completed discovery regarding class certification and merits, is premature.

230. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class seek an order enjoining Defendant's unfair, unlawful, and fraudulent practices and award costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

**COUNT VIII**
**Violation of Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code § 1791, *et seq*.**
**(On behalf of Plaintiffs Caplin, Chen, and Warren and the California Sub-Class)**

231. Plaintiffs Caplin, Chen, and Warren incorporate by reference each allegation as if fully set forth herein.

232. Plaintiffs Caplin, Chen, and Warren bring this Count individually and on behalf of the California Sub-Class.

233. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

234. Defendant is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

235. Defendant impliedly warranted to Plaintiffs Caplin, Chen, and Warren and the California Sub-Class members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

236. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

> (1) Pass without objection in the trade under the contract description.
>
> (2) Are fit for the ordinary purposes for which such goods are used.
>
> (3) Are adequately contained, packaged, and labeled.
>
> (4) Conform to the promises or affirmations of fact made on the container or label.

237. Plaintiffs Caplin, Chen, and Warren and members of the California Sub–Class purchased or leased the Class Vehicles, manufactured by the Defendant, from the Defendant and/or through their authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

238. Defendant provided Plaintiffs Caplin, Chen, and Warren and members of the California Sub–Class with one or more express warranties. For illustrative purposes, in connection with the purchase and lease of each of the Class Vehicles, Defendant provides New Vehicle Limited Warranty coverage and HV Battery Limited Warranty Coverage for the Class Vehicles. The New Vehicle Limited Warranty Coverage applies for 4 years or 50,000 miles and includes any repair to correct a defect in manufacturer's material or workmanship. The HV Battery Limited Warranty Coverage pertains to the Class Vehicles' HV battery applies for 8-years or 100,000 miles and includes coverage for defects in material and workmanship.

239. Under the warranties provided to members of the Class, Defendant promised to repair or replace covered defective HV batteries arising out of defects in materials and/or workmanship, including the Battery Defect, at no cost to owners of the Class Vehicles.

240. Plaintiffs Caplin, Chen, and Warren and members of the California Sub–Class experienced the Battery Defect within the warranty periods but Defendant failed to provide a suitable repair or replacement of the HV Battery free of charge within a reasonable time.

241. Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

242. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Battery Defect—(at the time of sale and/or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendant breached the implied warranty of merchantability.

243. Defendant cannot disclaim its implied warranty as it knowingly sold a defective product.

244. Defendant was provided notice of the Battery Defect by field reports and their own testing performed in response to reported thermal events and fires. Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Battery Defect and, on information and belief, has refused to replace the defective HV batteries free of charge within a reasonable time.

245. Defendant breached its express and/or implied warranties in violation of Cal. Civ. Code § 1791, *et seq*.

246. As a direct and proximate result of Defendant's breach of their express and/or implied warranties, Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class have been damaged in an amount to be proven at trial.

247. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

248. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendant's willful conduct alleged herein. Plaintiffs Caplin, Chen, and Warren and members of the California Sub-Class also seek reimbursement, replacement of the defective HV batteries in the Class Vehicles, and/or the revocation of the purchase or lease of the Class Vehicles, and all other relief available under Cal Civ. Code § 1794.The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT IX**
**Violations of the Colorado Consumer Protection Act**
**Col. Rev. Stat. § 6-1-101, *et seq.***
**(On Behalf of Plaintiff Wilsey and the Colorado Sub-Class)**

249. Plaintiff Wilsey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

250. Plaintiff Wilsey brings this count individually and on behalf of the Colorado Sub-Class.

251. Plaintiff Wilsey and the members of the Colorado Sub-Class members are consumers for purposes of Col. Rev. Stat. § 6-1-113(1)(a) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, et seq.

252. Defendant is a "person" within the meaning of Col. Rev. Stat. § 6-1-102(6).

253. Defendant's actions, as set forth above, occurred in the conduct of trade or commerce.

254. The Colorado CPA prohibits deceptive trade practices in the course of a person's business.

255. In the course of its business, Defendant violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the Battery Defect's existence in Class Vehicles and that it presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects. Specifically, by developing and installing defective battery systems in Class Vehicles, by failing to disclose and actively concealing the Battery Defect and its corresponding safety risks from regulators and consumers alike, by marketing, offering for sale and selling its Class Vehicles and their batteries as safe, technologically-advanced, and environment-friendly, and by presenting themselves as reputable manufacturers that valued safety and stood behind their vehicles after they were sold, Defendant engaged in deceptive business practices

prohibited by the Colorado CPA. Further, Defendant employed unlawful trade practices, and unfair or deceptive acts or practices to deny repair or replacement of the HV Battery within a reasonable time in violation of the Colorado CPA.

256. Defendant's deceptive practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Wilsey and members of the Colorado Sub-Class, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

257. Defendant's specific deceptive trade practices in violation of the Colorado CPA include, inter alia:

a. knowingly or recklessly making false representations as to the characteristics, uses, or benefits of the Class Vehicles;

b. representing that the Class Vehicles are of a particular standard, quality, or grade, while Defendant knew or should have known that they are of another; and

c. advertising the Class Vehicles with intent not to sell them as advertised.

258. Defendant's deceptive practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to

and did in fact deceive reasonable consumers, including Plaintiff Wilsey and members of the Colorado Sub-Class, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

259. Defendant's scheme and concealment of the Battery Defect and its associated risks in the Class Vehicles were material to Plaintiff Wilsey and members of the Colorado Sub-Class, as the Defendant intended. Had they known the truth, Plaintiff Wilsey and members of the Colorado Sub-Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

260. In purchasing or leasing the Class Vehicles, Plaintiffs and the Colorado Sub-Class were deceived by Defendant's failure to disclose the Battery Defect and misrepresentations about the Class Vehicles.

261. Plaintiff Wilsey and the Colorado Sub-Class members reasonably relied on Defendant's material omissions and false misrepresentations. Plaintiff Wilsey and members of the Colorado Sub-Class had no reasonable way to know that the Class Vehicles contained the Battery Defect and that the Class Vehicles were defective in materials, workmanship, design, and/or manufacture and posed a corresponding safety risk and had no way of discerning that Defendant's representations were false and misleading. Defendant possessed superior knowledge as to the quality and characteristic of the Class Vehicles, including the Battery Defect and its associated safety risk, and any reasonable consumer would have relied on

Defendant's misrepresentations and omissions as did Plaintiffs and members of the Colorado Sub-Class.

262. Defendant's deceptive practices were likely to and did in fact deceive reasonable consumers, such as Plaintiff Wilsey and the members of the Colorado Sub-Class.

263. Defendant knew or should have known that their conduct violated the Colorado CPA.

264. Defendant's deceptive practices occurred repeatedly in their trade or business, were capable of misleading a substantial portion of the purchasing public and imposed a serious safety risk on the public.

265. As alleged above, Defendant knew or should have known of the Battery Defect contained in the Class Vehicles. Prior to installing the defective HV batteries in the Class Vehicles, Defendant knew or should have known that the HV batteries in their Class Vehicles were susceptible to fire risk. Defendant knew or should have known about the Battery Defect before it began selling the Class Vehicles given the rigorous pre-launch testing Defendant should have performed on the HV batteries in the Class Vehicles. Defendant, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Battery Defect in the Class Vehicles. Defendant concealed this information.

266. Defendant had an ongoing duty to Plaintiff Wilsey and members of the Colorado Sub-Class to refrain from unfair and deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendant owed Plaintiff Wilsey and members of the Colorado Sub-Class a duty to disclose all the material facts concerning the Class Vehicles, including the Battery Defect and its associated risks, because they possessed exclusive knowledge. Defendant also owed a duty to disclose the Battery Defect because Defendant made partial representations regarding the safety of the Class Vehicles and thus owed a duty to reveal the complete truth to Plaintiff Wilsey and members of the Colorado Sub-Class members. Defendant had a duty to disclose any information relating to the safety, quality, functionality, and reliability of Class Vehicles because it consistently marketed the Class Vehicles as safe.

267. As a direct and proximate result of Defendant's violations of the Colorado CPA, Plaintiff Wilsey and the Colorado Sub-Class members have suffered ascertainable loss and actual damages and/or injury in fact. Defendant had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Colorado CPA. All owners of Class Vehicles suffered ascertainable losses as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

268. Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff Wilsey seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff and each member of the Colorado Sub-Class.

269. Plaintiff Wilsey also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT X**
**Violations of the Delaware Consumer Fraud Act**
**6 Del. Code § 2513, *et seq.***
**(On Behalf of Plaintiff Wilsey and the Delaware Sub-Class)**

270. Plaintiff Wilsey incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

271. Plaintiff Wilsey brings this count individually and on behalf of the Delaware Sub-Class.

272. Defendant is a "person" within the meaning of 6 Del. Code § 2511(7).

273. No exemption under 6 Del. Code § 2513(b) applies.

274. The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment,

suppression or omission, in connection with the sale, lease, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." 6 Del. Code § 2513(a).

275. In the course of its business, Defendant violated the Delaware CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the Battery Defect's existence in Class Vehicles and that it presents a safety hazard because of materials, workmanship, design and/or manufacturing defects. Specifically, by developing and installing defective battery systems in Class Vehicles, by failing to disclose and actively concealing the Battery Defect and its corresponding safety risks from regulators and consumers alike, by marketing, offering for sale and selling its Class Vehicles and their batteries as safe, technologically-advanced, and environment-friendly, and by presenting themselves as reputable manufacturers that valued safety and stood behind their vehicles after they were sold, Defendant engaged in deceptive business practices prohibited by the Delaware CFA. Further, Defendant employed unlawful trade practices, and unfair or deceptive acts or practices to deny repair or replacement of the HV Battery within a reasonable time in violation of the Delaware CFA.

276. Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers,

and were likely to and did in fact deceive reasonable consumers, including Plaintiff Wilsey and members of the Delaware Sub-Class, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

277. Defendant's scheme and concealment of the Battery Defect and its associated risks in the Class Vehicles were material to Plaintiff Wilsey and members of the Delaware Sub-Class, as the Defendant intended. Had they known the truth, Plaintiff Wilsey and members of the Delaware Sub-Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

278. Plaintiff Wilsey and members of the Delaware Sub-Class had no reasonable way to know that the Class Vehicles contained the Battery Defect and that the Class Vehicles were defective in materials, workmanship, design, and/or manufacture and posed a corresponding safety risk and had no way of discerning that Defendant's representations were false and misleading. Defendant possessed superior knowledge as to the quality and characteristic of the Class Vehicles, including the Battery Defect and its associated safety risk, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as did Plaintiffs and members of the Delaware Sub-Class.

279. Defendant had an ongoing duty to Plaintiff Wilsey and members of the Delaware Sub-Class to refrain from unfair and deceptive practices under the

Delaware CFA in the course of their business. Specifically, Defendant owed Plaintiff Wilsey and members of the Delaware Sub-Class a duty to disclose all the material facts concerning the Class Vehicles, including the Battery Defect and its associated risks, because they possessed exclusive knowledge. Defendant also owed a duty to disclose the Battery Defect because Defendant made partial representations regarding the safety of the Class Vehicles and thus owed a duty to reveal the complete truth to Plaintiff Wilsey and members of the Delaware Sub-Class members. Defendant had a duty to disclose any information relating to the safety, quality, functionality, and reliability of Class Vehicles because it consistently marketed the Class Vehicles as safe.

280. Defendant's violations present a continuing risk to the Delaware Sub-Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

281. As a direct and proximate result of Defendant's violations of the Delaware CFA, Plaintiff Wilsey and the Delaware Sub-Class members have suffered ascertainable loss and actual damages and/or injury in fact. Defendant had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Delaware CFA. All owners of Class Vehicles suffered ascertainable losses as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

282. Plaintiff Wilsey and the Delaware Sub-Class members seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct. Plaintiff Wilsey and the Delaware Sub-Class members also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

283. Defendant engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

**COUNT XI**
**Violation of Florida's Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq.***
**(On behalf of Plaintiff Baltodano and the Florida Sub-Class)**

284. Plaintiff Baltodano incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

285. Plaintiff Baltodano brings this count individually and on behalf of the Florida Sub-Class.

286. Plaintiff Baltodano and members of the Florida Sub-Class are "consumers" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FUDTPA"). Fla. Stat. § 501.203(7).

287. Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

288. No exemption under Fla. Stat. § 501.212 applies.

289. The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

290. In the course of their business, Defendant willfully failed to disclose and actively concealed the Battery Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles and otherwise engaged in activities with a tendency or capacity to deceive.

291. In violation of the FDUTPA, Defendant employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Defendant knowingly concealed, suppressed, and/or omitted material facts regarding the Battery Defect's existence in Class Vehicles and that it presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects. Specifically, by developing and installing defective battery systems in Class Vehicles, by failing to disclose and actively concealing the Battery Defect and its corresponding safety risks from regulators and consumers alike, by marketing, offering for sale and selling its Class Vehicles and their batteries as safe, technologically-advanced, and environment-friendly, and by presenting themselves as reputable manufacturers that valued safety and stood behind its vehicles after they

were sold, Defendant engaged in unconscionable acts or practices and unfair or deceptive acts or practices prohibited by the FUDTPA. Further, Defendant employed unconscionable acts or practices and unfair or deceptive acts or practices to deny repair or replacement of the HV battery within a reasonable time in violation of FUDTPA.

292. As alleged above, Defendant knew or should have known of the Battery Defect contained in the Class Vehicles. Prior to installing the defective HV batteries in the Class Vehicles, Defendant knew or should have known that the HV batteries in its Class Vehicles were susceptible to fire risk. Defendant knew or should have known about the Battery Defect before it began selling the Class Vehicles given the rigorous pre-launch testing Defendant should have performed on the HV batteries in the Class Vehicles. Defendant, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Battery Defect in the Class Vehicles. Defendant concealed this information.

293. Defendant deliberately withheld the information that the Class Vehicles' HV batteries are susceptible to misaligned electrodes that can lead to thermal events and fires to ensure that consumers would purchase and lease the Class Vehicles.

294. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

295. Defendant's unconscionable acts or practices and unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Baltodano and the other Florida Sub-Class members, about the true performance, safety, charging capabilities, and environmental friendliness of the Class Vehicles. Plaintiff Baltodano and members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Battery Defect and that the Class Vehicles were defective in materials, workmanship, design, and/or manufacture and posed a corresponding safety risk and had no way of discerning that Defendant's representations were false and/or misleading. Defendant possessed superior knowledge as to the quality and characteristic of the Class Vehicles, including the Battery Defect and its associated safety risk, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as did Plaintiffs and members of the Florida Sub-Class.

296. Defendant intentionally and knowingly misrepresented material facts and omitted material facts regarding the Class Vehicles and the Battery Defect with an intent to mislead Plaintiff Baltodano and the Florida Sub-Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

297. Defendant knew or should have known that its conduct violated the FUDTPA.

298. As alleged above, Defendant made material statements about the about the true performance, safety, charging capabilities, and environmental friendliness of the Class Vehicles, as well as omissions as the risks associated with the Battery Defect, that were either false or misleading. The facts concealed or not disclosed by Defendant to Plaintiff Baltodano and members of the Florida Sub-Class are material because a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles, or to pay less for them. Whether a vehicle's battery contains a defect causing fire or explosion is a material safety concern. Had they known the truth, Plaintiff Baltodano and members of the Florida Sub-Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

299. Defendant's misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite its knowledge of the Battery Defect and its associated risks.

300. Defendant intentionally concealed such material facts from Plaintiff Baltodano and members of the Florida Sub-Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

301. Defendant had an ongoing duty to Plaintiff Baltodano and members of the Florida Sub-Class to refrain from unconscionable acts or practices, and unfair or deceptive acts or practices under the FUDTPA in the course of their business.

Specifically, Defendant owed Plaintiff Baltodano and members of the Florida Sub-Class a duty to disclose all the material facts concerning the Class Vehicles, including the Battery Defect and its associated risks, because they possessed exclusive knowledge. Defendant also owed a duty to disclose the Battery Defect because Defendant made partial representations regarding the safety of the Class Vehicles and thus owed a duty to reveal the complete truth to Plaintiff Baltodano and members of the Florida Sub-Class members. Defendant had a duty to disclose any information relating to the safety, quality, functionality, and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.

302. Once Defendant made representations to the public about safety, quality, functionality, and reliability, Defendant was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. Rather than disclose the Battery Defect, Defendant engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the FUDTPA in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the defective HV battery.

303. Because Defendant fraudulently concealed the Battery Defect in the Class Vehicles and the true performance of the Class Vehicles, and now that the Defect has been disclosed, the value of the Class Vehicles has greatly diminished.

304. As a direct and proximate result of Defendant's violations of the FDUTPA, Plaintiff Baltodano and members of the Florida Sub-Class have suffered ascertainable loss and actual damages and/or injury in fact. Plaintiff Baltodano and members of the Florida Sub-Class who purchased or leased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Defendant's violations of the FUDTPA. Plaintiff Baltodano and members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

305. Defendant's conduct constitutes a continuing risk to Plaintiff Baltodano and members of the Florida Sub-Class, as well as to the public. The unlawful acts and practices alleged herein affect the public interest.

306. Plaintiff Baltodano and the Florida Sub-Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

307. Plaintiff Baltodano also seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiffs and the Classes, and award the following relief:

a. An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Class, and Plaintiffs' counsel as counsel for the Classes;

b. An order awarding declaratory relief and enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

c. Appropriate injunctive and equitable relief;

d. A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

e. An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

f. An order awarding any applicable statutory and civil penalties;

g. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

h. An award of costs, expenses, and attorneys' fees as permitted by law; and

i. Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: October 23, 2026

Respectfully submitted,

*/s/ James E. Cecchi*

James E. Cecchi
jcecchi@carellabyrne.com
Caroline F. Bartlett
cbartlett@carellabyrne.com
Kevin G. Cooper
kcooper@carellabyrne.com
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068

-and-

Joseph H. Meltzer
jmeltzer@ktmc.com
Melissa L. Yeates
myeates@ktmc.com
Tyler S. Graden
tgraden@ktmc.com
Jonathan F. Neumann
jneumann@ktmc.com
Matthew T. Macken
mmacken@ktmc.com
**KESSLER TOPAZ**

**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

*/s/ James E. Cecchi*
James E. Cecchi